IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:05-CR-166-BO (1)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| CHARLES ROBERT BAREFOOT, JR. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant's Motion to Suppress All Statements of Defendant Protected By Marital Privilege (DE #49), Motion to Suppress Statement of Defendant (DE #52), and Motion to Dismiss Superseding Indictment (DE #53). For the following reasons, Defendant's Motions are DENIED.

## BACKGROUND

In July 2002, Charles Robert Barefoot, Jr. was charged with one count of possession of firearms and ammunition by a person subject to a domestic violence restraining order in violation of 18 U.S.C. § 922 (g)(8). *United States v. Charles Barefoot, Jr.*, No. 5:02-CR-219-1-BO. On January 21, 2003, Barefoot entered into a plea agreement ("2003 Plea Agreement"), in which he agreed to cooperate with the Government and to "disclose, fully and truthfully in interviews with Government agents, information concerning all conduct related to the Indictment and any other crimes of which the Defendant has knowledge." DE # 52-2 at 3-4. The Agreement specified "that the USA-EDNC will not further prosecute the Defendant for conduct constituting the basis for the Indictment." *Id.* at 7. Barefoot alleges that, prior to signing the Agreement, the prosecutor told him that he would "get a walk" for anything he told the Government relating to

his involvement in bombs and explosives. DE # 52-2 at 4. During the debriefing following his plea-taking colloquy, Barefoot asserts that Government agents told Barefoot that he needed to "tell them everything he knew about 'the bombs' because 'telling them [the Government] where the bomb is cannot hurt him [Barefoot] anymore," as reflected in his trial counsel's notes. DE # 52-2 at 5.

In a Superseding Indictment returned August 2, 2006, Barefoot was charged with (1) conspiracy to deal in stolen firearms in violation of 18 U.S.C. § 371; (2) possession of stolen firearms in violation of 18 U.S.C. § 922 (j); (3) solicitation of a crime of violence (to destroy the Johnston County Courthouse and Sheriff's Office by explosive) in violation of 18 U.S.C. § 373; (4) receipt of an explosive with intent that it be used to injure persons or property in violation of 18 U.S.C. § 844 (d); (5) illegal storage of explosive material in violation of 18 U.S.C. §§ 842 (j) and 844 (b); and (6) distributing explosive material to a person less than twenty-one years of age in violation of 18 U.S.C. §§ 842 (d)(1) and 844 (a). The Government's discovery materials include statements by Barefoot's wife, Sharon Renee Barefoot, that described Barefoot's purchase of materials and construction of pipe bombs, his affiliation with the Ku Klux Klan, his threats to her and her child, and his discussions with others about "blow[ing] up" the Johnston County Courthouse. DE # 49-2 at 4.

On October 11, 2006, Barefoot filed a Motion to Suppress All Statements of Defendant Protected by Marital Privilege (DE # 49), a Motion to Suppress Statement of Defendant (DE # 52), and a Motion to Dismiss the Superseding Indictment (DE # 53). The Court held a hearing on the Motion to Suppress Statement of Defendant (DE #52) and the Motion to Dismiss the Superseding Indictment (DE #53) on May 18, 2011.

## DISCUSSION

### I. Motion to Suppress All Statements of Defendant Protected by Marital Privilege

Barefoot asserts that Sharon Barefoot's statements to police must be suppressed as within the scope of the marital privilege under Federal Rule of Evidence 501. DE # 49. Because the statements at issue either refer to conduct or to statements that were conveyed to third persons, the marital privilege does not apply and the statements will not be suppressed.

Information that is privately disclosed between husband and wife in the confidence of the marital relationship is privileged. *Blau v. United States*, 340 U.S. 332, 333 (1951); *United States v. Parker*, 834 F.2d 408, 411 (4th Cir. 1987). There are two types of marital privileges: the privilege against adverse spousal testimony and the privilege protecting confidential marital communications. *Trammel v. United States*, 445 U.S. 40, 51 (1980). The witness spouse is the holder of the adverse spousal privilege, and as such, she may not be compelled to testify nor foreclosed from testifying. *Id.* at 53. Because Sharon Barefoot voluntarily made statements to the police, the privilege against adverse spousal testimony is inapplicable here.

The privilege protecting confidential marital communications applies only to utterances, and not to acts. *Pereira v. United States*, 347 U.S. 1, 6 (1954). Therefore, the conduct of Barefoot that Sharon Barefoot described to police is not protected by this privilege. *See id.* These "conduct statements" include, among others, her statements to police that she witnessed Barefoot constructing pipe bombs, that she had seen him keep guns in his home, that he was affiliated with the Ku Klux Klan, and that he used a particular screen name and email address. DE # 49-2.

The marital communications privilege applies only to confidential communications and not to communications disclosed to others. *Parker*, 834 F.2d at 411. Although marital

communications are presumed to be confidential, that presumption may be overcome by proof of facts showing that they were not intended to be private. *Wolfle v. United States*, 291 U.S. 7, 13-14 (1934). For example, "the presence of a third party negatives the presumption of privacy." *Pereira*, 347 U.S. at 6. Therefore, Barefoot's statements in the presence of his son, Daniel Barefoot, lose their presumption of privacy and are no longer protected by the privilege. *See id.* The same is true of phone conversations overheard by Sharon Barefoot, as well as Barefoot's conversations with Gautier, Brewer, Sissy Brewer, and Mark. Therefore, as to all statements referring to conduct rather than utterances and as to all statements made in the presence of third persons, the motion to suppress statements under the marital communications privilege is denied.

## II. Motion to Suppress Statement of Defendant

Barefoot argues that his statements to the Government during the debriefing on January 21, 2003 must be suppressed under three theories: (1) that the statements were involuntary and taken in violation of Fifth Amendment Due Process; (2) that to admit the statements would violate the terms of Barefoot's 2003 Plea Agreement; and (3) that Barefoot was never given *Miranda* warnings, and therefore the statements were taken in violation of Barefoot's Fifth Amendment privilege against self-incrimination. For the following reasons, the Court rejects these arguments.

### 1. Due Process

Barefoot argues that his reliance on the Government's representations that he would "get a walk" and would not be "hurt" by his statements about bombs and explosives rendered his statement involuntary. DE # 52 at 5. A statement is involuntary under the Due Process Clause only if the defendant's "will [was] 'overborne' or his 'capacity for self-determination critically impaired.'" *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987) (quoting *Schneckloth v.*

*Bustamonte*, 412 U.S. 218, 225 (1973)). Coercive police activity is a "necessary predicate" to a finding that a confession is involuntary. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The mere existence of a promise to a defendant does not automatically render a confession involuntary. *United States v. Braxton*, 112 F.3d 777, 783 (1997). Rather, the inquiry is whether the "pressure" from the promise was "sufficient to cause the [defendant's] will to be overborne and his capacity for self-determination to be critically impaired." *Ferguson v. Boyd*, 566 F.2d 873, 877 (4th Cir. 1977).

Involuntariness analysis requires consideration of the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation. *Pelton*, 835 F.2d at 1071. Barefoot does not make any allegations that the setting of the debriefing or his own characteristics made him particularly susceptible to coercion, so the Court does not address those factors. Barefoot's only allegation, that he was coerced to make statements in reliance on a Government promise, is not supported by the facts. Barefoot's citation to *Grades v. Boles* is inapposite. DE # 52 at 5-8. In that case, the defendant was not represented by counsel, was not informed that he had a right to counsel, and was subject to interrogation for the "major portion" of the sixteen hours that had elapsed since his arrest. *Grades v. Boles*, 398 F.2d 409, 413 (4th Cir. 1968). The court held that Grades' lack of present counsel was "crucial." *Id.* Here, Barefoot knew that he was entering plea negotiations with the Government and did so with the presence and guidance of his attorney. Decl. of Joseph E. Zeszotarski, Jr. (DE #52, Exhibit A). Therefore, there is no indication that Barefoot's will was overborne and Due Process does not require suppression of his statements.

### 2. Violation of Plea Agreement Terms

Barefoot contends that oral promises allegedly made to him by Government agents are

binding components of his 2003 Plea Agreement, despite the integration clause stating that "this Memorandum constitutes the full and complete record of the Plea Agreement" and that "[t]here are no other agreements between the parties in addition to or different from the terms herein." Memorandum of Plea Agreement (DE # 52, Exhibit B).

In the presence of an integration clause, the Fourth Circuit has noted that "consideration of any alleged oral agreements" is precluded. *United States v. Sarkoezi*, No. 99-4158, 2000 WL 852680 at *1 (4th Cir. Jun. 28, 2000) (citing *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000); *United States v. Alegria*, 192 F.3d 179, 185-86 (1st Cir. 1999)). Barefoot is correct to note that extrinsic promises made by the Government may be binding in certain circumstances, even if they are excluded from the final plea agreement. DE #52 at 6-8; *United States v. Garcia*, 956 F.2d 41, 44 (4th Cir. 1992); *see also United States v. Harvey*, 791 F.2d 294, 306 (4th Cir. 1986). However, this is not such a circumstance. The Fourth Circuit has only allowed parol evidence to inform the content of a plea agreement when, as in *Garcia*, the omission of the alleged promise from the written agreement "could only be due to governmental overreaching, inadvertent omission, the dereliction of defense counsel, or some combination of those factors." *Garcia*, 956 F.2d at 44. Here, Government officials deny that the oral promises were made. DE # 65 at 8. The Government rejected defense counsel's removal of the "crime of violence" exception from the draft agreement. *Id.* at 9. In other words, there is no indication that both parties intended to be bound by this additional oral promise.

Further, Barefoot's actions belie his assertions that an additional oral promise was missing from his Plea Agreement. Unlike Garcia, who continued to behave in a manner consistent with his interpretation of the contents of his plea agreement (by refusing to testify, consistent with his understanding that "cooperation" was not part of his agreement), Barefoot

behaved as though the 2003 Plea Agreement was a full integration. *See Garcia*, 956 F.2d at 42-43. In the presence of counsel, Barefoot agreed without objection to the integration clause and "crime of violence" exception in his signed Plea Agreement and in his plea-taking colloquy before this Court. *Id.* at 10; DE # 65-2 at 8. Therefore, the terms of the 2003 Plea Agreement do not require suppression of Barefoot's statements.

### 3. Failure to Administer *Miranda* Warnings

Barefoot argues that the Government's failure to administer *Miranda* warnings renders his statements during the debriefing inadmissible as violating his Fifth Amendment privilege against self-incrimination. DE # 52 at 10. However, Barefoot signed a plea agreement prior to his debriefing in which he agreed to disclose information to Government agents "fully and truthfully." DE # 52-2 at 4. Entering into this plea agreement with the Government operated as a waiver of his Fifth Amendment privilege against self-incrimination because it "states in general terms the defendant's obligation to cooperate with the government." *United States v. Scruggs*, 356 F.3d 539, 546 (4th Cir. 2004). Therefore, the Government had no constitutional obligation to read Barefoot his *Miranda* warnings before questioning him in the debriefing, and *Miranda* does not require suppression of Barefoot's statements. *See id.*

### III. Motion to Dismiss Superseding Indictment

Barefoot argues that the Superseding Indictment should be dismissed on two grounds: (1) the provision in Paragraph 4 (c) of the 2003 Plea Agreement; and (2) the assurance of the prosecutor in the 2002 case that Barefoot would "get a walk" for whatever he told the Government regarding bombs and explosives.

### 1. Paragraph 4 (c) of the 2003 Plea Agreement

Barefoot argues that the Government violated the 2003 Plea Agreement by prosecuting

him for conduct that was within the scope of the 2002 Indictment. DE #53 at 1-2. The relevant provision of the Agreement provides, "[t]hat the USA-EDNC will not further prosecute the Defendant for conduct constituting the basis for the Indictment." DE # 53-3 at 7. Because the Court finds that the current Superseding Indictment does not include conduct that was within the scope of the 2003 Agreement, and the phrase "conduct constituting the basis for the Indictment" is not ambiguous, this argument fails.

The first two counts of the present Superseding Indictment are conspiracy to deal in stolen firearms from October 2001 to June 2002, in violation of 18 U.S.C. § 371; and possession of stolen firearms on October 13, 2001, in violation of 18 U.S.C. § 922 (j). DE #27-2 at 1-2. These charges refer to thirty-one firearms, for which the Government has serial numbers distinguishing them from the firearms at issue in the 2002 Indictment. DE # 225 at 12. The coverage of the Plea Agreement does not exempt Barefoot from all future firearms charges; only those that were the basis for the 2002 Indictment. Because these charges reference distinct weapons, they are not foreclosed by Barefoot's 2003 Plea Agreement.

Counts three through six of the present Superseding Indictment reference Barefoot's receipt, possession, and distribution of explosives. DE #27-2 at 3-5. The 2002 Indictment related only to the "knowing[] possess[ion] of firearms and ammunition." DE #53-3 at 5. Under 18 U.S.C. § 844 (j), "explosives" are defined, in part, as "gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (sic) (other than electric circuit breakers), detonators, and other detonating agents, [and] smokeless powders." 18 U.S.C. § 844 (j). Although this provision contains a long list of "explosives," it does not encompass the "firearms and ammunition" described in 18 U.S.C. § 922 (g). Therefore, similarly, the same items could not have satisfied both charges, and the charge under the present Superseding Indictment is not

foreclosed by the 2003 Plea Agreement.

## 2. Oral Promise that Barefoot Would "Get a Walk"

For the reasons discussed above, the Government's alleged oral promise to Barefoot that he would "get a walk" is not part of the integrated Plea Agreement and is therefore not binding on the Government. Therefore, Barefoot's reliance on the alleged oral promise does not require dismissal of the Superseding Indictment.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress All Statements of Defendant Protected By Marital Privilege (DE #49), Motion to Suppress Statement of Defendant (DE #52), and Motion to Dismiss Superseding Indictment (DE #53) are DENIED.

SO ORDERED.

This _21_ day of August, 2011.

TERRENCE W. BOYLE

UNITED STATES DISTRICT JUDGE